UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

MARCO COSTA,                          )
                                      )
            Plaintiff,                )
                                      )
v.                                    )
                                      )
MASSACHUSETTS PARTNERSHIP             )
CORRECTIONAL HEALTH (MPCH),           )
UMASS CORRECTIONAL HEALTH,            )
THOMAS GROBLEWSKI, M.D.,              )
REBECCA LUBELCZYK, M.D.,              )          CASE NO. _____
STEPHANIE BYRON, HEALTH               )
SERVICE ADMINISTRATOR, HSA,           )          VERIFIED COMPLAINT
CAPTAIN ANDREW REGO, LT.              )
BARROS, SGT. SEVELLO, SEAN            )
MEDEIROS, SUPERINTENDENT,             )
LYNN LIZOTTE, DEPUTY SUPER-           )
INTENDENT, KRISTIE LADOUCER,          )
DEPUTY SUPERINTENDENT,                )


## I.  COMPLAINT

1.  Comes now the Plaintiff, Marco Costa, pro se, in the above-entitled matter
and respectfully presents to this Honorable Court, Plaintiff presents a
Civil Rights Action filed by Marco Costa, a state prisoner, for damages and
injunctive relief under 42 U.S.C. §1983, alleging excessive use of force, as
well as bullying tactics, denial and delayed medical care in violation of
the Eighth Amendment to the United States Constitution, denial of relief due
to visual and mobility impairments in violation of the American Disability Act
42 U.S. C. §12101 et seq. and §504 of the Rehabilitation Act, and confinement
in segregation in violation of the Due Process Clause of the Fourteenth Amendment
to the United States Constitution. The Plaintiff also alleges torts of intentional
and negligence.

## II. JURISDICTION

2.  The Court has jurisdiction over the Plaintiff's claims of violations of Federal Constitutional Rights under 42.U.S.C. §§ 1331(1) and 1343.

    The Court has supplemental jurisdiction over the Plaintiff's state law tort claims under 28 U.S.C. § 1367.

## III. PARTIES

3.  The Plaintiff Marco Costa, was and is incarcerated at MCI-Norfolk during the events described in this complaint.

4.  Massachusetts Partnership for Correctional Health, (MPCH) is the medical subcontractor for the Massachusetts Department of Correction. This company is sued in its official and individual capacity.

5.  Umass Correctional Health (Umass) was the medical subcontractor for the Massachusetts Department of Correction. This Company is sued in its official and individual capacity.

6.  Thomas Groblewski, M.D. and Doctor-in-charge of MPCH, a employee of MPCH and is sued in both his official and individual capacity.

7.  Rebecca Lubelczyk, M.D. and Assistant to Dr. Groblewski, a employee of MPCH and is sued in both her official and individual capacity.

8.  Stephanie Byron, RN, Health Service Administrator (HSA), a former employee of Umass and a present employee of MPCH, and is sued in both her official and individual capacity.

9.  Andrew Rego, Captain Massachusetts Department of Correction, a Massachusetts State employee, and is sued in both his official and individual capacity.

10.  Lt. Barros, a Massachusetts Department of Correction employee, a Massachusetts State employee, and is sued in both his official and individual capacity.

-2-

10A.  Sgt. Sevello, a Massachusetts Department of Correction employee, a Massachusetts State employee, and is sued in both his official and individual capacity.

10B.  Lynn Lizotte, Deputy Superintendent, who oversaw medical at MCI-Norfolk, a Massachusetts Department of Correction employee, a State employee, and is sued in both her official and individual capacity.

10C.  Kristie Ladoucer, Deputy Superintendent, who presently oversees medical at MCI-Norfolk, a Massachusetts Department of Correction employee, a State employee, and is sued in both her official and individual capacity.

10D.  Megan McDermott, (SP), a Nurse Practitioner, who is employed by MPCH, and at the present time is the Plaintiff's provider, she is sued in both her official and individual capacity.

**EXHAUSTION:**

10E. This case is fully exhausted, as is required by the Federal Rules of Court, said grievances and letters will be provided during discovery. Plaintiff wishes to make this Court aware that numerous medical grievances appealed, Plaintiff is still awaiting responses, and responses that are over six (6) months old.

## IV. STATEMENT OF FACTS

17.  In 2009 Plaintiff was in a very serious motorcycle accident, Plaintiff almost died. Plaintiff was in ICU for 18 days, spent a total of 30 days in the hospital, and the hospital wanted him to stay longer but he released himself.

18.  When rushed to the emergency room 750 ml of blood was removed from his left lung, he broke his neck, he broke at least 3 verebrate, caused numerous bulging disc(s), herniated numerous disc(s), broke 7 - 8 ribs which punctered both his lung and heart, which has now caused an irregular heart beat, both shoulders had major structural damage, brain injury causing photophobia (extreme sensitivity to light) which causes severe migraines, as well as numerous other minor injuries. _1_ /

19.  Plaintiff was on numerous medications, medications for migraines, pain medication, muscle relaxors, heart medications and others which will be released if necessary. Most medications were stopped when incarcerated.

20.  When 18 years old was run over and Plaintiff's right knee was crushed, he has had a total of four (4) operations on this knee since, he has never recovered his stability in that knee and always wore a brace to give lateral support and for years was on crutches and/or a cane, removed when incarcerated.

21.  Plaintiff has the ability to receive disability benefits when in the outside community due to his numerous injuries. His disabilities come from his sight issues, his lack of mobility, his inability to bend down, his severe migraines and his heart beat issues which must constantly be monitored. He cannot lift, he cannot bend down, and his pain on a 1 - 10 scale is a constant 9.

---

_1_./ Plaintiff is more than willing upon request to sign waivers to the defendants to obtain all hospital records from both his motorcycle accident and when  run over at the age of 18.

22.  As stated Plaintiff's accident was in 2009, Plaintiff was arrested in 2010, and after a Bench Trial was sentenced to a state sentence of 8 - 10 years.

23.  While in County Jail Plaintiff was found to have vertigo, he now has this permanently and is given medication for this disease.

24.  While in the outside community Plaintiff had to wear dark glasses  due to his severe sensitivity to light, had constant dizziness, massive migraines (which caused tunnel vision and darkness, he had a  knee brace for his right knee with metal support. In the community he took morphine and vicodin as well as muscle relaxors for pain management, of course he was not working due to his injuries.

25.  In the outside Community he saw his doctors once a week at Umass Worcester. At times his pain was so bad he was rushed to Lemenister Hospital, given more pain medication and deliberately put to sleep for 4 - 6 hours by the hospital to control the migraine pain.

26.  Upon arrival at County Jail Plaintiff was given tylenol for pain, which did not touch the pain, thus because the pain was not controled said mirgaines and other conditions got worse. Plaintiff was just starting to be treated for virtigo and migraines, when he and counsel decided on a bench trial in order to get him out of county jail, to state prison in hopes of better medical care. **Turned out not to be true.** County Jail also found that Plaintiff was a diabetic and started treating with medformin.

27.  Upon Plaintiffs arrival at MCI–Cedar Junction approximately the summer 2011 Plaintiff during his intake interview explained all about his medical issues, medication was given for his thyroid problem, 3  different heart medications, since accident Plaintiff was enemic and is given a daily multi–vitimen, prilosec for acid reflux, senna for regular bowel movement, flomax to control bladder as

as Plaintiff's bladder was crushed during the accident, and Plaintiff was still getting medformin for his diabeties, put for Plaintiff's pain and migraines all Plaintiff received was motrin, naperson and tylenol and nothing worked, Plaintiff needlessly suffered in pain and with severe migraines, even showing documentation what medication worked, Plaintiff was denied pain relief.

28. Plaintiff provided sick slip after sick slip explaining the debilitating effects that this pain was having on him, effecting his virtigo and dizziness, as well as his severe migraines, all fell on deaf ears and nothing was done leaving Plaintiff in needless pain, a constant 9 - 10, a 8 on a good day.

29. In ___2011___ Plaintiff was moved to Shirley Medimum, upon arrival Plaintiff went to HSU, Shirley Medimum is where the DOC has their main DOC Hospital, most issues were taken care of decently but for pain management and Plaintiff's constant migraines, which caused his blood pressure through the roof, and remember Plaintiff must take two different medications for his heart already. Shirley Medimum refused any type of proper pain management or even to send Plaintiff's to experts for his severe migraine headaches and his pain, again on a 1 - 10 scale a constant 9 -10, no one should have to live in the pain Plaintiff lives in.

30. No matter where Plaintiff went, no matter who Plaintiff spoke to, wrote grievances on, no one would help address Plaintiff's pain and migraine issues, this man who almost died, has major medical issues who was on morphine and vicidin and muscle relaxors, now received motrin, tylenol and naperson, no medical personal would put up with that type of treatment from their doctor.

31. When moved to MCI-Concord in _2012_ Plaintiff received the same type of treatment as everywhere else, he was allowed a knee brace with the metal support, and again sick slip after sick slip, talking to anyone who would listen nothing was done for pain management and or Plaintiff's severe migraines

-5-

thus Plaintiff was left to suffer in needless pain, which would reach level
ten on the 1 - 10 pain scale with nothing but motrin for the pain. Concord
did not address Plaintiff's shoulder either, Concord did allow Plaintiff
a metal knee brace which gave him the lateral knee support Plaintiff needed,
and not one Administrator said anything about this metal knee brace as
done at other Institutions;

32.  Plaintiff was then moved to SBCC and stayed until approximately 2013,
Plaintiff went through the same process for pain management and was denied
any medication narcotic in nature for pain, pain due to accident all over
Plaintiff's body was/is a constant 8 - 10, but Plaintiff's migraines are
a constant 10 without any type of relief. Migraine pain gets so bad that
Plaintiff must put dark clothing over his eyes and stay still not to move
because the pain got so bad, **and absolutely no proper medication was offered;**

33.  Plaintiff arrived at MCI-Norfolk in 2013, Plaintiff for the first few
weeks saw no medical Provider and again was left in needless pain with no
where to turn for help;

34.  After numerous sick call slips placed in the medical box Plaintiff saw
PA Mary Connolly, Plaintiff was refused all narcotics for pain, but his
medical records from outside hospitals were requested, Plaintiff was given
Excedrin Extra Strength for migraines, as well as high blood presure medica-
tions and psych medication for migraines. Cortizone shots were considered
for shoulder pain but each time saw on-sight ortho said shots were denied.
At this time Plaintiff still had the metal knee brace;

35.  PA Connolly requested on Plaintiff's behalf that he be sent to nuerology
at Shattuck Hospital but this request was denied by MPCH management. At some
point PA Connolly left the MPCH employement, and NP Casandra Wartman was
assigned to Plaintiff;

36.  As is always a constant battle Plaintiff presented numerous sick slips
before being seen, upon seeing NP Wartman with migraine pain, Plaintiff
explained that the blood presure medications and psych medications are not
working for migraines, Plaintiff's Extra Strength Excedrin was reduced from
60-120 pills a month to 30 pills a month or one a day, this was not enough
and again, though the Extra Strength Excedrin was not working that well, some
relief was obtained, now Plaintiff was in the same boat prior to seeing PA
Mary Connolly. Plaintiff at this time still had his needed knee brace, again
NP Wartman tried to send Plaintiff to nuerology but this was again denied
by MPCH, shoulder again had x-rays taken and cortizone shots were given but
did not help. Plaintiff had requested nuerotin for pain but this was also
denied, as denied before when requested;

37.  NP Wartman did everything possible to make Plaintiff's life as miserable
as possible, again no narcotics for pain management, thus Plaintiff suffers
needlessly in pain, Plaintiff's injuries are all documented, and they are
severe. NP Wartman reduced Plaintiff's Extra Strength Excedrin to 30 pills
a month allowing migraine pain to be overwhelming once again, nothing is being
done about shoulder pain, back pain, knee pain, blood presure pills and
psych medications did not work at all and Wartman did not care. NP Wartman
would not even consider trying to send Plaintiff to nuerology after denied
by MPCH;

38.  NP Casandra Wartman left employement of MPCH, NP Ziesel took over as
Plaintiff's Provider. Immediately after seeing Plaintiff Extra Strength
Execdrin went from 30 pills a month, reduced by Wartman **(suffered for many
months needlessly)**, to 90 pills a month, making some headway with said
migraines. NP Ziesel then came up with a combination medications which
might work but this was denied by MPCH, all pain medication including
nuerotin requested by Ziesel was denied by MPCH. **Now for whatever reason
Plaintiff's knee brace was taken away.** Because of Plaintiff's accident
and damage to Plaintiff's nose which **no one would address Ziesel was able
to get Plaintiff a appointment at Shattuck with ear, nose & throat. But
Ziesel's request to see ortho was denied thus knee getting worse.** NP Ziesel
was able to get Plaintiff a appointment with the foot doctor, Dr. King;

39.  Upon Plaintiff's appointment with ear, nose and throat it was found
that Plaintiff had a Deviated Septum, a broken nose and a perforation in
the nose towards the left eye, a large hole, the ear, nose and throat doctor
stated he could fix the nose to a point but the Deviated Septum was to
large to fix. Plaintiff also had a sleep study done and was given a C-Pac
machine, but without fixing the nose the C-Pac machine did not work as well
as it could;

40.  NP Ziesel also gave Plaintiff a order for a stand-up locker, something
Plaintiff desperately needed due to Plaintiff's damaged knee(s), back, and
shoulders which made it hard for Plaintiff to get into his locker on the
ground under the bed. No other Provider could get this done and this was
requested on numerous occasions;

41.  Plaintiff had a excellent rapor with NP Ziesel, she actually reviewed
all prior documentation including everything from the accident(s). Ziesel
actually had a plan for Plaintiff, one inwhich after numerous years in
prison Plaintiff felt his medical needs would be met, and if not at least
his Provider would put up a fight trying to obtain the needed care for
Mr. Costa. Just as things started going right Ziesel was removed from her
position at MCI-Norfolk and sent somewhere else within the DOC still working
for MPCH. What Mr. Costa did learn was that most of his medical issues could
be treated with the correct medication and someone who actually cared about
his health;

42.  Plaintiff's new Provider and still is his Provider is Megan. From the
begining the Provider/Patient relationship was not good. Ziesel becomes his
Provider starts correcting Plaintiff's medication needs, gets him to outside
hospitals and she is removed. Megan comes into the picture and the **first
thing she did was take 60 extra strength pain pills (Excedrin) away, refused
to give any treatment for Plaintiff's shoulder, refused to address the removed
knee brace, did nothing with the ear, nose and throat  treatment plan,** but
did order physical therapy for Plaintiff's shoulder, which he had been through
previously and was of no help;

43.  As stated Ziesel okayed a Stand-up Locker for Plaintiff due to Plaintiff's
disability, knees, shoulder, dizzyness when bending over which causes vertigo at
times, and she also okayed a knee brace (this did not arrive). The Stand-up

locker was moved in Plaintiff's Unit, Unit 4-3. Plaintiff had this for about one week. He took all of his possessions in the locker under the bed, (which he has extreme trouble bending over to obtain). As stated one week into having the Stand-up locker, approved (See Exhibit **"A"**) the Unit Sgt., Sgt. Sevello came around doing rounds and asked Plaintiff where he got the Stand-up locker? Plaintiff showed him the approval, the Sgt. stated he would be back;

44.  About 20 minutes later Sgt. Sevello was back with Lt. Barros (Housing Lt.) Lt. Barros asked Plaintiff how he got the Stand-up Locker which he explained, reviewed Exhibit **"A"** which he took with him explaining that he would bring the approval back. Lt. Barros never brought the approval back, and the Stand-up Locker was removed from Plaintiff's cell;

45.  Plaintiff next spoke with Captain Rego (Housing Captain). Captain Rego stated **you don't qualify for a stand-up locker, their is no order, asked for his approval back and was told request from medical for 15.50.** The Captain stated you will never get a Stand-up locker in this prison;

46.  At Access Hour Plaintiff saw two or three Administrators, Plaintiff was told: 1) Ziesel had no right/authority to right that order; 2) Plaintiff asked why he did not get his approval from Ziesel back, Plaintiff was told he would not be getting Exhibit **"A"** back; 3) That if Plaintiff continued to press for a Stand-up locker he would loose his job. This information came from Superintendent Medeiros, Captain Rego, and the Inner Premeiter Police (IPS);

47.  Because Plaintiff would not let this go retaliation started, Sgt. Sevello wrote three disciplinary reports for contraband, none of this contraband would have ever been mentioned except for Plaintiff requesting his Stand-up Locker;

48.  According to the Rules & Regulations once a Provider writes that a inmate/patient needs a Stand-up Locker, second pillow, second mattress, anything which would help a prisoner with a medical condition cannot be denied. Once written the Regional Medical Director signs off, as does the Health Service Administrator, but this is just a formality. This was used as an excuse not to give the needed Stand-up Locker to Plaintiff;

49.  Because of Plaintiff's accident he will be disabled for the rest of his life. Plaitniff falls under the American Disabilities Act and the Rehabilatation Act. Thus at the time Deputy Superintendent Summer and then Deputy Superintendent Lizotte who over saw the American Disabilities Act here at MCI-Norfolk anything requested by Plaintiff's Provider due to his disabilities could not be denied, **but it was;** See Exhibit **"B"**;

50.  Mr. Costa has brain damage, this brain damage causes severe migraines, his knee and shoulder are help together by metal and both do not work well at all. Plaintiff has trouble bending down, bending over, and because of the brain damage gets dizzy when bending over. Plaintiff also gets vertigo. Thus the Stand-up Locker, Second Pillow which was taken as well for a while, everything he needs is provided because of his disability; **"B"**.

51.  When their was a change of Deputy Superintendents at MCI-Norfolk, Plaintiff wrote to Deputy Thibault putting her on notice of his disabilities. Said Disabilities will cause Plaintiff to never be able to work again in the outside world; See Exhibit **"B"**;

-8-

52.  Due to the ongoing issues Plaintiff was having in Housing Unit 4-3, and
because of his disability, the constant pain in Plaintiff's head. Sgt. Sevello
continued to retaliate against Plaintiff. Plaintiff was removed at one point
from population and placed in segregation all due to his need because of his
disability;

53.  Plaintiff put Superintendent Medeiros on notice as to the retaliation
of Sgt. Sevello. One look at Plaintiff's d-board history and one would see
that disciplinary reports at MCI-Norfolk were nonexistent until the issue
with the Stand-up Locker and then the disciplinary reports would just not
stop;

54.  Plaintiff was told that Deputy Lizotte was now the road-block, Plaintiff
at Happy Hour / Access Hour, (a place to speak with the Administration, held
twice a week). Plaintiff asked Deputy Lizotte why he could not have a Stand-up
Locker which has already been approved. Plaintiff explained that he had sent
in numerous Reasonable Accomadation Forms requesting this and that NP Ziesel
had approved for Plaintiff and why is this not being provided. Plaintiff was
told that their was no medical order, that HSA Byron had not signed off and
because Plaintiff had a job. Plaintiff expressed that he did in fact have a
Order, and the failure to provide this Stand-up Locker was illegal, a ADA
violation and causing Plaintiff needless pain and suffering because everytime
he has to get down to the locker under his bunk he is in pain; See Exhibits **"A-1/A-2"**

55.  Plaintiff even stated to the Administration if you will not give me a
Stand-Up Locker, what about a small foot locker just so I do not have to get
down on my hands and knees to get into the locker under his bunk. This was
thought about by the Administration but then denied;

56.  Plaintiff upon release from the SMU was placed in Unit 2-1, in this Unit
the retaliation continued, for about 12-18 months Plaintiff was sent to the
SMU (segregation) about 1/2 dozen times and continually placed in Unit 2-1.
C.O.s Pineo and Lacivedia (sp) constantly tagged teamed him and continually
wrote nonsense disciplinary reports to have him in and out of the SMU disrupting
Plaintiff's life and adding to needless pain and suffering;

57.  On one occasion another C.O., C.O. Sherry came from Unit 2-3 to Unit 2-1
to use a Staff bathroom, Plaintiff was in with the CPO speaking about personal
matters. Upon leaving the bathroom C.O. Sherry stated that Plaintiff assaulted
him with the door. Plaintiff was immediately placed in the SMU with some very
serious charges. The CPO and another CPO stood up for Plaintiff and the charges
were dropped. Plaintiff was removed from the SMU, this time placed in Unit 1-2;

58.  Due to the continued retaliation Plaintiff has had no job for more than
two (2) years now loosing up to 120 days of good time, and he can no longer
support himself in prison loosing between 15 - 21.00 per week in pay or
approximately 1720.00 over a two year period. See Exhibits **"C & D"**;

59.  During this time period Plaintiff was given a new Provider, named Megan
a Nurse Practitioner, who allegedly knows more than the doctor here, and more
than Plaintiff's specialists, who on the first visit starting d-cing Plaintiff's
medication just because she could, which started the relationship on the wrong
foot, and Mr. Costa had filed numerous grievances on her and medical which
will be provided during the discovery process. This Provider caused Plaintiff

-9-

to spend two-three (2-3) days in Norwood Hospital because Heart medication was
not re-ordered as it should be and Plaintiff went withoutthis medication for
**almost a month, thus this medication which regulates his heart, caused this
Plaintiff needless pain and suffering and** Plaintiff was sent to Norwood Hospital
until his heart was regulated and Norwood made sure this medication was available
at MCI-Norfolk. This woman caused needless pain, heart issues, and needless
stress making his condition worse; **See Exhibits "E & F";**

60.  Plaintiff also receives numerous medications for pain, one specific
medication is called indisin (sp) this is what is called a NASID (non-narcotic
pain medication).NP Megan d'ced this medication for no reason but because she
could, she actually took almost all Plaintiff's medication for **no other reason
than she could, allegedly this was for 2 weeks,** after four weeks Plaintiff
was told he would not be getting his indisin (sp) back. The 1st - 2nd week
of October 2017 Plaintiff was again having chest pains, Plaintiff was placed
in the ADL (Assisted Daily Living) overnight for observation. The next morning
Dr. Churchville came in and asked Plaintiff how he was doing. Plaintiff
explained what was transpiring between NP Megan and himself, the pain and stress
this was causing. **Dr. Churchville stated she can't do that, gave Plaintiff his
indisin (sp) back, used for pain relief, as well as other medications.** But for
almost 4 - 8 weeks Plaintiff was left in needless pain, allowed to stress over
the situation, which caused other medical issues, such as breathing problems
because NP Megan does not like Plaintiff. She is a company girl and treats
based on cost not need; See Exhibits **"E & F";**

61.  For that two - four weeks Plaintiff was also taken off his extra-strength
excedrin for his severe migraines, thus for this period of time Plaintiff's head
hurt so bad, with no medication he could take, he felt at times his eyes were
coming out of his head. After a significant amount of time NP Megan gave back
Plaintiff's extra-strength excedrin, but instead of the 90 pills he was getting
a month, it was lowered to 30 pills a month or one pill a day. Dr. Churchville
allegedly fixed this as well;

62.  Plaintiff due to his accident has severe nurlogical issues, he has repeatedly
asked to go to Boston Medical Center Nuerology Department  (BMC), NP Megan has
repeatedly denied this request, and instead sent him to the Shattuck Hospital
where a doctor who has no clude thought the best line of action was to take this
Plaintiff off all medications for two weeks and they would take it from there.
Plaintiff has documented severe head injuries, Plaintiff needs to be at BMC so
that the same treatment he received in the outside Community he would receive in
prison, NP megan continually denies this request, **even denies going back to
nuerology department at Shattuck;**

63.  Because of the accident Plaintiff has a severe nasal issues. Plaintiff thanks
to NP Zisel was sent to the Ear, nose and throat specialist at Shattuck. He
has severe left maxillary sinusitis, mild mucosal thickening in some of the
ethroid air cells and complete opacification of the left maxillary sinus. The
Ear, Nose & Throat specialist had/have a game plan, some can be fixed via surgery,
some can be made better, a certain hole cannot be fixed. Plaintiff's deveated
septum was of a major concern. Since the diagnosis Plaintiff has not been back to
Shattuck Hospital and Plaintiff has been told surgery was denied. It is Plaintiff's
belief that this was done because when NP Megan requested said surgery, her report
to obtain approval for surgery was not properly done. Thus Plaintiff is left to
suffer needlessly when expert opinion is that much of this could be fixed;

64.  Plaintiff also has a severe perforation (hole in nose) that Ear, Nose and Throat state they cannot completely fix, but because of this damage Plaintiff does not breath correctly and has constant nose bleeds, if this is not bad enough this problem causes needless pain as the majority of this can be fixed. As for the nose bleeds, and this is documented, **any type of bleeding in prison is not a good thing and could land you in Segregation until sorted out.** Plain and simple surgery should be approved but was **denied, treatment based on cost not need;**

65.  Plaintiff has a right shoulder injury that causes him so much pain he has to use a pillow, extra t'shirts, or coat so that he does not sleep on the shoulder, if he does he is right up due to the pain. From testing it has been found he has tendinosis, A/C joint space, a type 1 acromiom demonstrates mild lateral downsclopping, bursitis. Mild infraspinatus & subscapularis tendinosis, minimal subacrominal subdelitoid bursitis and mild AC joint osteoarthritis. When speaking with NP Megan about his shoulder pain he was told that surgery was not a option, but when Plaintiff saw said experts he was told that surgery could address most of the issues and help elevate the pain. Surgery was denied, when Plaitniff takes the indisen, which NP Megan d'cd, the medication did give Plaintiff some relief. Thus for approximately 8 weeks Plaintiff was not allowed surgery and pain medication was taken, this was done deliberately;

66.  As stated Plaintiff has numerous issues with his right knee due to the accident. Plaintiff went months without a knee brace that was allowed at other institutions, (this brace had metal on the sides), with the help of Deputy Thibault Plaintiff was able to find a knee brace all could live with that helped Plaintiff stablize his knee. But for months almost a year without a brace Plaintiff's knee buckeled, caused him needless pain, as it still does, and without the brace Plaintiff could walk no more than 15-20 minutes. Plaintiff has repeatedly requested that he see ortho, Dr. Carillo at Shattuck Hospital, orthos at BMC all to no avail. Megan (NP) just refuses to address this medical need;

67.  Plaintiff's migraines are again out of control, Plaintiff finally was receiving 90 extra strength excedrin with depokate for virtigo. Because of the accident and the damage to the brain and head, these migraines on a 1 - 10 scale hit the 100 mark. At times these migraines are so bad Plaintiff is in his cell, lights off, sunglasses on, dark as possible, quiet as possible so that he can manage as best as possible the migraine. As you can imagine that is not easy in prison. The continual removal of this medication causes Plaintiff more pain, longer migraines, and needless suffering, all which with proper medication which he has received at hospitals, **which works, but denied by Megan because the medication is a narcotic, this is completely unacceptable,** if the medication works, he should be able to receive it, if it is a narcotic then like all others who receive narcotics at MCI-Norfolk he msut go to the med cage three times a day for this medication;

68.  Speaking of medication, Plaintiff has continued problems obtaing KOP (Keep on Person) medications, Plaintiff takes Depokate, Vit. C, Iron enemic, Gabapentin (nuerotin), Hydrochlorothiazide, Indomethain, Levothyroxine, Lisinopril, Metformin, Multivitamins, Omeprazole, Tamsulosin, Cetinizine, Two inhalers, Flutizasone, Meclizine, Atorvastalin and Propranolol. Most medications are KOP but each time Plaintiff goes to the window to obtain his KOPs the medication is not there, the order ran out and not renewed, thus because of the relationship with his Provider (Megan) Plaintiff never has all the medications he needs, thus is continually getting worse not better; See Exhibits **"E & F";**

69.  Plaintiff has spoken to HSA Byson (Health Service Administrator) on the subject of replacing NP Megan as his Provider, KOP problems, medications continually being d'ced, not seeing experts, ect., done via grievances and personal letters to HSA Byron, MPCH main address in Westborough, spoke to Administrators here at MCI-Norfolk and the Superintendent all to no avail. Grievances and letters will be provided during discovery;

70.  The problems at MCI-Norfolk Medical Department are well documented. John Stote (former Majority Chairman, executive board member for 7 years), William Duclos (present Majority Chairman) and Mr. Francisco Robles (Latino Chairman) Stote (presently Chairman LAC (Legal Advisory Committee) spoke with Associate Deputy Commissioner Stephanie Collins and her complete staff. Mr. Robles introduced all, Stote then spoke on all said issues for more than a hour, showing numerous pending suits due to the lack of medical care. Including almost 90 deaths at MCI-Norfolk since October 2011 most if not all traced back to medical. Stote spoke of inadquate medical care, not enough staffing, KOP issues, quality of help, Associate Deputy Collins stated Stote was speaking for all inmates and that we see a problem and that they were going to fix the issues. Stote then received a visit approximately 2-4 weeks later from the parent company out of Virgina. Stote was told give us 90 days you will see major changes. Major changes have occurred, but care has gotten worse not better. Obtaining needed KOPs is a issue, the issue is that Providers are to busy to keep up with their 380 patients each (approximately) an impossible task. A 3-11, 4-12 provider was to be hired never happened, 2 more day time providers were to happen never did, transcribers were hired for the providers but that is going slow, and men are getting sicker. It is a very bad situation;

71.  The Department of Correction will not intervene. Plaintiff was sentenced to the Massachusetts Department of Correction, their care and custody, but when Plaintiff has complained their response is well medical is subcontracted. When you write to Secretary of Public Saftey, the Governor's Office, the Commissioner's Office none of these letters are answered by those Offices, it is replyed to by the Superintendent of MCI-Norfolk. Thus nothing gets fixed. Plaintiff is getting nothing but the run-arouns and none of the agencies steps up and does their jobs. Thus making a bad situation worse;

72.  Plaintiff has continually requested a new Provider and been continually denied. Thus in this case Plaintiff is suffering needlessly in pain because his Provider has a peronal issue with him. That is not fair nor correct and deliberate indifference towards the Plaintiff;

73.  Plaintiff due to the accident is pernamently disabled. Plaintiff's Reasonable Request Forms submitted to the Deputy Superintendent who oversees medical and the ADA issues of the Institution, first Cythia Summer and now Kristie Ladoucer has fallen on deaf ears. Plaintiff cannot even get a stand-up locker, a foot-locker, anything where he does not have to get down on his hands and knees in order to get into his locker. Plaintiff has pernament brain damage, pernament sight damage and severe light sensitivity which causes severe migraines, mobility issues, memory issues, pain issues and no one is addressing his disability needs under the American Disability Act & Rehabilitation Act. This of course includes the Superintendent, Deputy Superintendents, HSAs and Plaintiff's Provider; Exhibit **"B"**;

74.  Because of Plaintiff's issues with his Provider, with Dr. Rebecca Lubelczyk, Dr. Thomas Groblewski who oversee the medical subcontractor, when they see a

continually medical problem or problems, a man continually filing grievances to no
avail, his medical problems getting worse, these people are suppose to get involved
and address the situation. This is not happening, it is not happening because care
**is based on cost not need, thus as in the case at bar, men suffer needlessly in
pain, and medical issues get worse not better.** Thus these individual ate liable
for the inadequate medical care, medical malpractice, deliberate indifference,
denial of care and everything else including ADA violations, just as everyone
else named in the suit;  See Exhibit **"F"**;

75.  More specifically Dr. Groblewski and Dr. Lubelczyk, as well as the prison's
HSA sit and decide who and who will not get what needed care, **and again care is
based on cost not need.** Thus as in this case those mentioned denied Plaintiff
needed surgeries, needed care for nuerology, shoulder, brain/migraine issues,
knee issues, most importantly pain issues. When a man cannot open his eyes because
his head hurts to much, cannot breath due to damage in his nose, has issues walking
or his shoulder hurts so much he cannot sleep, denial of care is a Eighth Amendment
violation cruel and unusual punishment. This is unaceptable and needs to be
addressed;

76.  The same goes for the Massachusetts Department of Correction. Plaintiff was
sentenced to the care and custody of the Massachusetts Department of Correction,
thus the DOC is responsible for Plaintiff's health care. Just because the DOC
subcontracts medical care to a outside contractor, the DOC must have oversight,
when filing grievances to the DOC on this subject, all they say is that this is
subcontacted and they are not involved. This is why Sean Medeiros, Superintendent,
Lynn Lizotte and Kristie Ladoucer, both Deputy Superintendent's who oversee
medical are liable for the medical issues in this case;

77.  When Stote met with Angela Goehring, RN, Cheif of Nursing, MSA, CCHP from the
parent  Company Centurian out of Vienna, VA, with Johnnie R. Lambert, RN, LHRM, CCHP,
they explained to Stote, that this is not how their Company does business and that
their boss told them to fix this. That we are not inmates we are patients, give us
90 days and problems will get fixed. Stote mentioned one specific patient, Russell
Snyder, who missed approximately 13 appointments at BMC, who suffered from liver
cancer, which then spread from 3 small spots to 60% of his liver due in large part
to the missed appointments. Stote was told that Mr. Snyder would be taken care of.
Mr. Snyder died in September, after getting a medical parole, which he never made
it home. This is the type of care MPCH gives, again care **is based on cost not need.
It is easier to let a inmate die then care for him because who cares.** If this
Plaintiffd is not cared for as he should be, especially with the nurological issues
that he has, he could be next on the list of those who have died at MCI-Norfolk
due to the care Norfolk Medical gives, and care based on cost not need. This type
of care is completely unacceptable, men such as Plaintiff are suffering daily, this
Court needs to send a clean message that this type of care will not be tolerated.

77A.  To make matters worse, Plaintiff is further suffering because those in charge
no longer aecept their responsibilities for those with disabilities. The American
Disabilities Act, Rehabilitation Act is nonexistent, Norfolk still has building
in which those with wheelchairs cannot get into. Family members in wheelchairs
at times cannot visit because the machine for those to use to visit does not work
most of the time. Those with disabilities need to be cared for, they are treated
as though extra work needs to be done. Men such as Plaintiff must be treated in
accordance of said Acts but are not, they are treated in a way that violates
their rights. Exhibit **"B"**;

V.                                    CLAIMS FOR RELIEF

## A. Failure to Protect:

78.  Plaintiff incorporates paragraphs 1-78 into this claim, including the failure

of Superintendent Medeiros, Deputy Lizotte to act on their knowledge of a substantial

risk of serious harm to Plaintiff by Sgt. Sevello, Lt. Barros, Captain Rego, C.O.

Pieno, C.O. LaCiveda (sp) and C.O. Sherry violating Plaintiff's Eighth Amendment

Right  to be free from cruel and unusual punishment and deliberate indifference to

his saftey.

79.  As a result of defendants Medeiros and Lazottes' failure, Plaintiff was emotionally

and physically abused, lost a stand-up locker order, called a liar, received numerous

fictious disciplinary reports, sent to segregation, repeatedly sent to Unit 2-1, where

the abuse continued, again receiving fictious disciplinary reports, which Plaintiff was

forced to plead out to, to get out of segregation, and then C.O. Sherry invented a false

claim that Plaintiff hit him causing Plaintiff to be sent to Segragation, possibly

facing more time, DDU, ect., until it was found that the incident was false. Said

actions caused Plaitniff to loose vast amounts of property, canteen and caused Plaintiff

serious physical and emotional injuries.

## A1. Medical Malpractice:

79A.  Plaintiff incorporates paragraphs  1 - 79 into this claim, including the

failure of the medical staff, especially Plaintitt's Provider, Dr. Groblewski, Dr.

Lubelczyk, as well as HSA Stephanie Byron, to act on specialist treatment plans,

what MPCH (medical) calls recommendations. These plans allowed for needed surgeries,

medications, and follow-up visits.

79B.  As a result of the medical defendants especially Plaintiff has suffered with

his inability to breath though his nose, severe headaches, needless pain and

suffering. His knee getting progressively worse, his migraines getting so bad

-13B-

that the defendant now has light blindness, to the point if he is not wearing
special glasses he cannot have light hit his eyes, if it does he has instant
migraines. Plaintiff's shoulder is getting worse. Most importantly Plaintiff is
not being see by his Provider as stated by Dr. Groblewski, and thus he is not
getting the treatment orderd by specialists and experts, and his Provider knows
this, purposely refuses to treat.

## B.  Inadequate Medical Care:

80.  Plaintiff incorporates paragraphs 1 - 79 into this claim, including all
Medical Defendants, NP Megan, Dr. Lubelczyk, Dr. Groblewski, MPCH and DOC
Defendants Medeiros, Lizotte and Ladoucer for failure to abide by expert
opinion, follow-up care, failure to abide my medication needs, failure to
properly order medications, failure to treat, treat in a timely fashion, abide
by said contact rules and regulations, abide by HIPPA, failure to use doctors
when other medical personal such as nurse practitioners are cheaper but not
as qualified, failure to provide proper staffing, failure to approve needed
recommended by expert surgery, all of which constituted Eighth Amendment
violations;

81.  Plaintiff incorporates paragraphs 1-80 into this claim, including all
Medical and DOC Defendants, as Medical Providers, MPCH have a policy of
restricting, if not outright denying, follow-up care ordered by a doctor when
such care is expensive;

82.  Plaintiff incorporates paragraphs 1 - 81 into this claim, including all
Medical and DOC Defendants, including Defendant Megan, NP, Dr. Lubelczyk and
Dr. Groblewski for following the policyof the Medical Providers when NP Megan
fenied any follow-up care to Plaintiff that had been ordered;

83.  Plaintiff incorporates paragraphs 1-82 into this claim, including all
Medical and DOC Defendants, the failure of the Medical Defendants to ensure

that Plaintiff received needed treatment, surgeries, and medication(s), despite
its knowledge of Plaintiff's serious medical needs, constituted inadequate
medical care, care not equaled to the Community Standard of Care constitutes
a Eighth Amendment violation, cruel and unusual punishment to Plaintiff's
serious medical needs;

84.  Plaintiff incorporates paragraphs 1 - 83 into this claim. As a result of
said Defendants' failure to provide adequate medical care, and failure to
to provide needed medical treatment, Plaintiff suffered further injury and
physical and emotional pain and injury;

## C.  Deliberate Indifference:/ (MEDICAL NEEDS):

85.  Plaintiff incorporates paragraphs 1-84 into this claim. the refusal of the
Medical Defendants, especially NP Megan denying Plaitniff needed recommended
surgeries, to see nuerology, including nuerology at Boston,Medical Center,
proper medication, deliberately leaving Plaintiff in pain, removal deliberately
of pain and migraine medications, failure to re-order needed medications including
heart medications as this failure led to a hosptial stay, failure to abide by
expert opinion, failure to abide by expert recommendation, failure to treat,
failure to treat in a timely manner, failure to abide by contract, failure to abide
by rules and regulations, failure to adibe by HIPPA regulations, failure to use
doctors when other medical personal such as nurse practitioners are cheaper but
not as qualified, failure to provide proper staffing, faiure to approve needed
surgery recommended by expert opinion, all constituted deliberate indifference
to Plaintiff's serious medical needs in violation of the Eighth Amendment;

86.  Plaintiff incorporates paragraphs 1-85 into this claim. The Medical Defendants
have a policy of restricting, if not outright denying, follow-up care ordered
by a doctor when such care is expensive, constituting deliberate indifference

-15-

to Plaintiff's serious medical needs in violation of the Eighth Amendment;

87.  Plaintiff incorporates paragraphs 1-86 into this claim. Nurse Practitioner Megan, Plaintiff's Provider was following policy of the Medical Providers when she Dr. Lubelcayk and Dr. Grpblewski when they denied follow-up care to Plaintiff that had been ordered, constituting deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment;

88.  Plaintiff incorporates paragraphs 1-87 into this claim. The failure of the Medical Defendants/Providers to take steps to ensure that Plaintiff received the needed treatment, surgeries, and medication(s), despite its knowledge of Plaintiff's serious medical needs, constituted deliberate indifference  to Plaintiff's serious medical needs;

89.  Plaintiff incorporates paragraphs 1-88 into this claim. As a result of said Defendants failure to provide needed medical treatment, medications, surgeries and proper medical care in a timely fashion, constitutes deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment;

90.  Plaintiff incorporates paragraphs 1-89 into this claim. As a result of said Defendants failure to provide needed medical treatment, medications, surgeries, and proper medical care in a timely fashion, Plaintiff suffered further injury and pyhsical and emotional pain and injury;

**D.  Negligence:**

91.  Plaintiff incorporates paragraphs 1-90 into this claim. As a result of the Medical and DOC Defendant's failures in this case to take steps to make sure that the Plaintiff received needed medical treatment, medication, surgeries, and proper medical care equaled to the Community Standard of care, and to provide this in a timely fashion said Defendant are Negligent and must be held responsible for their failures to properly care for the Plaintiff.

-16-

92.  Plaintiff incorporates paragraphs 1-91 into this claim. As a result of said Defendants negligence Plaintiff suffered further injury and physical and emotional pain and injury;

**E.  Retaliation:**

93.  Plaintiff incorporates paragraphs 1-92 into this claim. The refusal of Defendant Medeiros and Lizotte to provide protection to the Plaintiff as a result of Plaintiff trying to obtain a stand-up locker under the Reasonable Accomdation Forms provided by the Massachusetts Department of Correction. Plaintiff received continued retaliation from Sgt. Sevello, Lt. Barros, Captain Rego, :C.O. Pineo, C.O. LaCaCivedia (sp) and C.O. Sherry including a false disciplinary report written by C.O. Sherry, all because Plaitniff petitioned for redress because his approved Stand-up Locker was not wanted by Staff, thus said Defendants violated Plaintiff's Right to the First Amendmemt;

94.  Plaintiff incorporates paragraphs 1-93 into this claim. As a result Plaintiff was removed from his job, lost senority, received numerous false disciplinary reports, some of which he was forced to plead guilty to, lost property and was accused by C.O. Sherry of assaulting him, sent to the SMU ultimately being released but not before more property and canteen was lost;

**F.  American Disabilities Act and Rehabilitation Act Violations:**

95.  Plaintiff incorporates paragraphs 1-94 into this claim. The refusal of the DOC and Medical Defendants to give Plaintiff a Stand-up Locker, a small foot locker, a knee brace, proper glasses which blocked light due to his light-sensitivity, a job, ability to earn good time, earn money to support himself and the failure of said Defendants to reach out to organizations who could help Plaintiff with his disabilities violate the American Disability Act and Rehabili-

-17-

tation Act. No one who has disabilities should suffer needlessly, be ridculed because of his disability or discriminated against as was/is being done in this case;

96.   Plaintiff incorporates paragraphs 1-95 into this claim. As a result of the Defendants actions, as well as failure to act, Plaintiff suffered further injury and physical and emotional injury.

**VI.**                                     **CONCLUSION**

As this Courthouse is well aware by now, the medical care received by prisoners at MCI-Norfolk is awlful (and thats being nice). As in the present case Plaintiff has serious medical needs currently not being treated. This Plaintiff had to get sick, be admitted to the ADL, so as he could see the doctor, who revewed his medical chart and then was visibly upset as to how a Nurse Practitioner was treating a patient. In the mean time Plaintiff went without medication for months. Further issue preside with the HSAs, these people in charge must understand that their job is to oversee what is going on and correct the wrongs, not base treatment on cost not need, all are being affected because of this. Almost 90 deaths since October 2011 and not one investigation has been held. It is Plaintiff's hope that this Honorable Court will see said wrongs and help address this very serious situation.

**VII.**                                 **RELIEF REQUESTED**

**WHEREFORE,** Plaintiff prays that this Honorable Court grants the following requested relief:

A.   Declare that the Defendants failed to protect Plaintiff from Sgt. Sevello, Lt. Barros, Captain Rego, C.O. Pineo, C.O. LaCivedia and C.O. Sherry who violated Plaintiff's Eighth Amendment Right when Plaintiff's Stand-up Locker was removed, and numerous fictious disciplinary reports came to life;

B.   Declare that NP Megan violated Plaintiff's Eighth Amendment Right to Medical care;

C.   Declare that the Medical Defendants/Providers violated Plaintiffs'
     Right to Medical Care in Violation of the Eight Amendment, including
     but not limited to Inadequate Medical Care, Deliberate Indifference,
     Negligence and the Continued Violations of Their Contract;

D.   Declare that the DOC Defendant are Responsible for Prisoners Care &
     Custody when sentenced by the Massachusetts Court to a State Prison
     Sentence;

E.   Issue An Injunction that Said Defendants (ALL) Must Provide Needed
     Medical Care In A Timely Fashion, According to Expert Opinion, and
     that Treatment is **based on NEDD NOT COST;**

F.   Award Compensatory Damages For Plaintiff's Physical and Emotional
     Injuries, in an ammount no less than $100,000.00 per Defendant;

G.   Award Punitive Damages For Plaintiff's Physical and Emotional Injuries
     in an ammount no less than $500,000.00 per Defendant;

H.   Grant Plaintiff Fees and Costs of this Litigation;

I.   Appoint Counsel and/or a Law Firm to Represent Plaintiff;

J.   Grant Plaintiff such Other Relief As If it May Appear Plaintiff is
     Entitled to.


Date: 11/3/17                          Respectfully submitted,

                                       Marco Costa, pro se
                                       MCI-Norfolk
                                       P.O. Box 43
                                       Norfolk, MA 02056