UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-12201-RGS

MARCO COSTA

v.

MASSACHUSETTS PARTNERSHIP FOR CORRECTIONAL HEALTHCARE, LLC, et al.

MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS

August 8, 2018

STEARNS, D.J.

Marco Costa, an inmate at MCI-Norfolk, brings a litany of claims against officials and employees of the Massachusetts Department of Corrections (DOC) – Superintendent Sean Medeiros, Deputy Superintendent Lynn Lizotte, Deputy Superintendent Kristie Ladoucer, Captain Andrew Rego, Lt. Brett Barros, and Sgt. Antonio Servello (collectively, defendants). All of the claims are related, although some only remotely, to Costa's medical care while in custody. The Complaint seeks injunctive, declaratory, compensatory, and punitive relief. Before the court is defendants' motion to dismiss all counts.

BACKGROUND

Marco Costa is an inmate who has been held at MCI-Norfolk since 2013. Compl. ¶ 33. Prior to his incarceration, Costa was involved in two serious automobile accidents that left him with permanent injuries and chronic pain, especially in his right knee. *Id.* ¶¶ 17-21. Dissatisfied with his medical treatment at MCI-Norfolk, Costa filed several grievances with the Massachusetts Partnership for Correctional Healthcare (MPCH), a private contractor that provides medical care to DOC inmates. *Id.* ¶ 28.[1]

Because of his difficulties in bending his injured knee, Costa requested a stand-up locker in lieu of the standard inmate under-the-bed locker. *Id.* ¶ 43. The request was "subject to review by DOC institutional staff pursuant to DOC's Policy for Reasonable Accommodations for Inmates" (DOC Policy). Defs.' Mem., Dkt. #42 at 5. To comply with DOC Policy, a proposed medical accommodation must be approved by the Health Services Administrator (HSA), conveyed to the Institutional ADA Coordinator, and entered into the "'Restrictions / Limitations / Special Needs' section of the Inmate Management System (IMS) database." *Id.*

---

[1] MPCH and several of its employees were also named as defendants in this matter, but this court separately dismissed Costa's claims against them. *See* Memorandum and Order Granting Defendants' Motion to Dismiss, Dkt. #55 at 7.

On November 13, 2015, an MPCH nurse practitioner wrote up a "proposed medical restriction," recommending that Costa be given a stand-up locker to relieve his injured knee. Compl. ¶ 43. Subsequently, a stand-up locker was installed in Costa's cell. *Id.* A week later, prison officials removed the locker, informing Costa that the nurse practitioner did not have the authority to order the locker and that the order itself did not conform to DOC Policy in that it had never been submitted to the HSA for approval. Defs.' Mem. at 5-6.

Between November 20, 2015, and May 12, 2017, corrections officers cited Costa for eight disciplinary infractions, ranging from possession of contraband to the use of insolent language. *Id.* at 6-7. In several instances, the charges were dismissed. *Id.* In others, Costa was sanctioned with the loss of privileges, including canteen, telephone, and visitation access. *Id.* On April 5, 2017, corrections officer Timothy Sherry submitted a disciplinary report claiming that Costa had intentionally shut a door on his hand. *Id.* at 7. While the report was being reviewed by Sherry's supervisors, Costa was "placed in Action Awaiting Status, a form of administrative segregation." *Id.* The charges were ultimately dismissed. *Id.*

On November 8, 2017, Costa filed this Complaint in the federal district court, alleging violations of the Federal Civil Rights Act, 42 U.S.C. § 1983, the

Americans with Disabilities Act (ADA), Title II, 42 U.S.C. § 12101 *et seq.*, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794.

## STANDARD OF REVIEW

To survive a motion to dismiss, a plaintiff must state a claim to relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This burden "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. However, in evaluating a motion to dismiss, the court takes the "factual allegations in the complaint as true and make[s] all reasonable inferences in favor of the non-moving party. *See Mississippi Pub. Emps.' Ret. Sys. v. Boston Sci. Corp.*, 523 F.3d 75, 85 (1st Cir. 2008).

## DISCUSSION[2]

---

[2] Costa requested, and the court granted, three extensions of time to file an opposition to defendants' motion to dismiss. See Dkt. #47; Dkt. #50; Dkt. #53. Costa did not file his response by the final extension date, August 3, 2018. He did, however, file (without seeking leave to amend) an Amended Complaint on August 8, 2018. "A plaintiff is permitted to amend a complaint once as a matter of right prior to the filing of a responsive pleading by the defendant." *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004). Thereafter, leave to amend will not be granted if the amendment "would be futile" in aiding the plaintiff's claim. *Resolution Trust Corp. v. Gold*, 30 F.3d 251, 253 (1st Cir. 1994). Costa's untimely Amended Complaint merely adds more conclusory allegations, which provide no additional support for his claims. He also seeks to append new exhibits, including self-serving and unauthenticated letters from a fellow inmate – who previously filed similar litigation of his own in the federal district court – which cannot be considered for the purposes of this motion. *See Stote v. UMass Corr. Health Care*, 2014

4

*§ 1983 Claims*

A. Deliberate Indifference to Medical Needs

Costa contends that defendants failed to provide him with adequate medical care in contravention of the Eighth Amendment. In opposition, defendants claim that they relied on the medical judgments of Costa's health care providers, and accordingly, cannot be held to have exhibited deliberate indifference to his needs. To state an actionable claim of inadequate care, "a prisoner must satisfy both of two prongs: (1) an objective prong that requires proof of a serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need." *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014). In an Eighth Amendment context, deliberate indifference implies criminal recklessness or the intentional neglect of a prisoner's health or his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). So defined, deliberate indifference encompasses "a narrow band of conduct, and requires evidence that the failure in treatment was purposeful." *Kosilek*, 774 F.3d at 82. Because "actual notice" of an inmate's specific need for medical care is

---

WL 2916760, at *1 (D. Mass. 2014). "When 'a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged),' then the court can review it upon a motion to dismiss." *Diva's Inc. v. City of Bangor*, 411 F.3d 30, 38 (1st Cir. 2005) (internal citation omitted). That is not the case here.

5

required to show deliberate indifference, it follows that prison administrators and staff may, except in the most obvious of instances, rely "on the opinions of the treating doctors." *Layne v. Vinzant*, 657 F.2d 468, 471-472 (1981); *see also Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) ("The policy supporting the presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care is a sound one.").[3]

Even assuming that Costa satisfies the objective prong of the test, his claim fails to demonstrate that defendants subjectively acted with a deliberately indifferent state of mind with respect to his health or medical needs, or that in any instance they ignored the appropriate medical judgments of his providers. For that reason alone, the claim fails.

B. Failure to Protect

Costa also claims that Superintendent Medeiros and Deputy Superintendent Lizzote failed to protect him from officers of the DOC by refusing to "act on their knowledge of a substantial risk of serious harm" to his well-being. Compl. ¶ 78. A failure to protect claim requires a showing

---

[3] There is no suggestion that Costa suffered an emergency condition "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990).

6

that prison officials knew "that inmates face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Defendants argue, accurately, that Costa has failed to plead "factual allegations that any DOC official ever inflicted serious bodily harm upon him or threatened to do so." Defs.' Mem. at 13. In the absence of harm – or an imminent risk of harm – there cannot be an actionable failure to protect, and the claim fails.

C. Retaliation

Costa insists that DOC officers undertook repeated acts of retaliation in the form of false disciplinary reports in response to his effort to obtain a stand-up locker, in violation of his First Amendment rights. Defendants maintain that because run-of-the-mill disciplinary reports would not deter a person of ordinary firmness from exercising his rights in the future, Costa's retaliation claims cannot stand. "Under the First Amendment . . . [a] plaintiff must first prove that (1) he or she engaged in constitutionally protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) the protected conduct was a substantial or motivating factor in the adverse action." *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 43 (1st Cir. 2012).

Even assuming that Costa was engaging in constitutionally protected conduct by applying for a stand-up locker (a dubious proposition), and that defendants' disciplinary reports were adverse actions (a more plausible contention), Costa provides no well-pled factual allegations in his Complaint suggesting that the locker request was a "substantial or motivating factor" for the defendants' actions. *Esposito*, 675 F.3d at 43. "[B]are assertions . . . [which] amount to nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim . . . are conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quoting *Twombly*, 550 U.S. at 555). The conclusory assertion that "one look at [Costa's disciplinary]-board history" would show that the reports he received were attributable to the locker request does not cut it. Compl. ¶ 54.

### *ADA and Rehabilitation Act Claims*

Costa next asserts that defendants' refusal to provide him with a necessary accommodation for his disability, namely a stand-up locker, contravenes Title II of the ADA and § 504 of the Rehabilitation Act. Defendants, for their part, claim that Costa was never denied the benefits of MCI-Norfolk's services or programs. Title II of the ADA provides: "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. [4]

To state a *prima facie* Title II claim, a plaintiff must prove "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 5 (1st Cir. 2000). "The protection afforded by the ADA is characterized as a guarantee of meaningful access to governmental benefits and programs, which broadly means that public entities must take reasonable steps to ensure that individuals with disabilities can take advantage of such public undertakings." *Theriault v. Flynn*, 162 F.3d 46, 48 (1st Cir. 1998).

Even assuming that Costa is a qualified individual, he provides no well-pled factual allegations that his lack of a stand-up locker "excluded [him] from participation in or [denied him of] the benefits of [MCI-Norfolk's] services, programs, or activities." 42 U.S.C. § 12132. Moreover, as Costa does not claim that his health care providers – who were earlier dismissed from

---

[4] Because the First Circuit treats Title II ADA claims and § 504 Rehabilitation Act claims as "coextensive," the statutes are analyzed together. *Pollack v. Reg'l Sch. Unit 75*, 886 F.3d 75, 80 n.3 (1st Cir. 2018).

9

this Complaint – legitimately informed DOC officials that he needed a stand-up locker (or any other medical accommodation, for that matter), defendants acted reasonably by providing him the same under-the-bed locker as other inmates. *See Shedlock v. Dep't of Corr.*, 442 Mass. 884, 857 (2004) (It is "reasonable for prison officials to insist that [an] alleged need for further accommodation be reviewed and *confirmed* by medical personnel . . . before a prisoner is accorded what other prisoners would likely view as special treatment.) (emphasis added).

### ORDER

For the foregoing reasons, the defendants' motion to dismiss is <u>ALLOWED</u>. The Clerk will enter judgment accordingly and close the case.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE